In the Matter of the Probate of the last Will and Testament of SAMUEL COTTRELL, deceased.

On appeal to this court from a judgment of General Term affirming a surrogate's decree, the evidence may be looked into only for the purpose of seeing whether there is competent evidence to support the conclusions of fact found by the surrogate; if such evidence is found, the court is concluded by the findings.

A regular attestation clause, shown to have been signed by the witnesses and corroborated either by the circumstances surrounding the execution of the instrument, the testimony of other witnesses to the fact of due execution, or other competent evidence, is sufficient to establish the execution of a will signed by the testator, even against the positive testimony to the contrary of the subscribing witnesses. (Code of Civil Procedure, § 2620.)

In proceedings for the probate of a will the two persons purporting to have signed as subscribing witnesses testified, in substance, that none of the formalities required by the statute in its execution were complied with in their presence, and denied that either of them was present at its execution or signed the attestation clause. Said clause was in due form, and it was proved that it, as well as the body of the will, was wholly in the handwriting of the testator; that the signature to the will was his; that the testator boarded with the alleged subscribing witnesses, who were husband and wife; that he had previously executed in due form another will, to which the husband was a subscribing witness; that the will in question was found among the papers of the testator after his decease; that during his last sickness he declared that his will, which he described as executed with said persons as witnesses, was either among his papers or in the hands of his executor. Specimens of the handwriting of each of the subscribing witnesses were then put in evidence, and from a comparison thereof with the signatures to the attestation clause experts testified that such signatures were in the handwriting of said subscribing witnesses respectively. The surrogate found that the said witnesses signed the attestation clause, and that the will was properly executed. *Held,* that the evidence was sufficient to justify the findings, and the same were not reviewable here; that no greater weight could be given to that part of the testimony of the subscribing witnesses, denying that the requisite formalities were performed, than to that denying that they were present and signed, and if they were mistaken as to the latter, it was a reasonable conclusion that they were mistaken as to the former.

*Chaffee* v. *B. M. Con.* (10 Paige, 85), *Rutherford* v. *Rutherford* (1 Denio, 33), *Lewis* v. *Lewis* (11 N. Y. 220), *Woolley* v. *Woolley* (*ante*, p. 231), distinguished.

(Argued March 4, 1884; decided March 21, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made December 4, 1883, which affirmed a decree of the surrogate of the county of Rensselaer, admitting to probate the will of Samuel Cottrell, deceased.

The material facts are stated in the opinion.

Statement of case.

*James Lansing* for appellants. The statute requires that a will to be properly executed must be signed by the testator at the end; such signature must be made or acknowledged in the presence of two witnesses; the testator must declare in the presence of the witnesses that the instrument is his will, and it must have an attestation clause, which must be signed by the witnesses at the request of the testator. (2 R. S. 63, § 40.) A failure to comply with either one of these requisites is fatal to the validity of the will. Each of them must be established by proof; and the proponents have the affirmative, and must establish the due execution of the instrument. (*Chaffee* v. *Baptist Miss. Con.*, 10 Paige, 85 ; *Matter of Kellum's Will*, 52 N. Y. 517 ; *Lewis* v. *Lewis*, 11 id. 220 ; *Remsen* v. *Brinckerhoff*, 26 Wend. 332.) It is a fatal objection if one of the witnesses neither saw the testator subscribe nor heard him acknowledge his signature. (Redfield's Law and Practice in Surrogates' Courts, 160 ; *Rutherford* v. *Rutherford*, 1 Denio, 33.) Or if the declarations were not made in the presence and to the knowledge of both witnesses. (*Seymour* v. *Van Wyck*, 6 N. Y. 120 ; *Gilbert* v. *Knox*, 52 id. 125.) Or if either of the witnesses did not sign his name with the intention of becoming an attesting witness to an instrument which he knew to be a will. (*Ex parte Le Roy*, 3 Bradf. 227 ; *Bagley* v. *Blackman*, 2 Lans. 41.) If a subscribing witness has forgotten the occurrence, or testifies against the execution of the will, the will may, nevertheless, be established upon proof of the handwriting of the testator, and also of such other circumstances as would be sufficient to prove the will upon the trial of an action. (Throop's Code, § 2620, note.) When one of the witnesses fails to recollect, or denies, that one or more of the formalities of the statute had been observed, due compliance may be shown by the testimony of the other subscribing witness. (*Jauncey* v. *Thorne*, 2 Barb. Ch. 40 ; *Kinne* v. *Kinne*, 2 T. & C. 391.) When both of the subscribing witnesses deny the execution of the will with due formalities, it may be proven by other witnesses who were present. (*Rugg* v. *Rugg*, 21 Hun, 383 ; 83 N. Y. 592 ; *Reeve* v. *Crosby*, 3

Redf. 74.) Various circumstances may appear justifying the probate of a will when one or both the subscribing witnesses fail to recollect or deny that some or all the formalities were observed. (*Peebles* v. *Case*, 2 Bradf. 226.) If the signatures of the testator and subscribing witnesses are admittedly genuine, and the witnesses, from lapse of time, have lost all recollection of the occurrence, if the attestation clause is full, and no contradictory facts or circumstances are proven, the attestation clause may furnish the requisite proof. (*Matter of Pepoon's Will*, 91 N. Y. 255; *Rugg* v. *Rugg*, 21 Hun, 383; 83 N. Y. 592; *Lawrence* v. *Norton*, 45 Barb. 448; *Brown* v. *Clark*, 77 N. Y. 369; *Peck* v. *Cary*, 27 id. 9.) Due execution cannot be inferred or presumed from the fact that the attestation clause states that all the forms prescribed by the statute were complied with when there is evidence to the contrary. (*Lewis* v. *Lewis*, 11 N. Y. 220; *Chaffee* v. *Bapt. Miss. Con.*, 10 Paige, 85; *Orser* v. *Orser*, 24 N. Y. 51; *Burke* v. *Nolan*, 1 Denio, 436.)

*Robert H. McClellan* for respondents. The will being a holograph will, the testator knowing what formalities were necessary with the full attestation clause, the presumption is that all the formalities were observed. (*In re Kellum*, 52 N. Y. 517; *Trustees of Auburn Seminary* v. *Calhoun; Jauncey* v. *Thorne*, 2 Barb. Ch. 40–53; *Chaffee* v. *Baptist Miss. Con.*, 10 Paige, 85–91; *Peebles* v. *Case*, 2 Bradf. 226; *Will of Pepoon*, 91 N. Y. 255.) It was not error to admit the declarations of the testator as to the *factum* of this will. (*Beadles* v. *Alexander*, 9 J. Baxter [Tenn.], 604; 2 Am. Prob. 173; *Peebles* v. *Case*, 2 Bradf. 226; *Betts* v. *Jackson*, 6 Wend. 173, 175.) The requisite qualification for devising real estate is not citizenship but residence. (Laws of 1845, chap. 115, § 5.)

RUGER, Ch. J. In reviewing questions arising on appeals from Surrogates' Courts in cases commenced therein previous to September 1, 1880, when the last seven chapters of the Code of Civil Procedure went into effect, we are precluded

by section 1337 of that Code from re-examining the conclusions of fact reached by the court below, except in cases where the Supreme Court has reversed their judgments upon such questions, and so certify in their order of reversal. (See § 1338.)

Previous to the adoption of that section appeals from the decrees of surrogates, brought up for review by the appellate tribunals, all of the questions, whether of fact or law, which were determined in the court of original jurisdiction.

Such appeals are now to be determined in this court solely upon the questions of law presented, except in the special case referred to. (*In the Matter of Ross*, 87 N. Y. 514; *Davis* v. *Clark*, id. 623.)

In these as in other appeals to this court, however, we look into the evidence given on the trial only for the purpose of seeing whether there is competent evidence to support the conclusions of fact found by the trial court, and if we find such evidence, we are concluded by its findings.

The Code of Civil Procedure has also put, in the form of a statutory enactment, a rule in relation to the proof necessary to show the valid execution of a will which had indeed before then been well settled, but had previously existed by force of adjudication alone, viz.: That the due execution of a will might be established by competent evidence, even against the positive testimony of the subscribing witnesses thereto.

So much of section 2620 as is material to the point under discussion reads as follows : " If such a subscribing witness has forgotten the occurrence, or testifies against the execution of the will, the will may, nevertheless, be established upon proof of the handwriting of the testator and of the subscribing witnesses, and also of such other circumstances as would be sufficient to prove the will upon the trial of an action."

Although the occasions in which all of the subscribing witnesses testified positively against the due execution of a will have been infrequent of late years, a number of such instances are reported among the earlier English cases which have been cited with approval in recent cases in our courts. Those

cases are collated and commented upon in the case of *Tarrant* v. *Ware*, by Judge DENIO, reported as a note to the case of *Trustees of Auburn Seminary* v. *Calhoun* (25 N. Y. 425). After reviewing the English authorities, and referring to the evidence of subscribing witnesses, he says : " My purpose is to show that whether their denial of what they had attested proceeds from perversity or want of recollection, the testament may in either case be supported." It was said by Judge GOULD in *Trustees of Auburn Seminary* v. *Calhoun* (*supra*) : " It is too late to claim that the facts making due execution must *all or any of them* be established by the concurring testimony of the two subscribing witnesses. Both of those witnesses must be examined, but the will may be established even in direct opposition to the testimony of both of them." The principle here stated was approved in *Rugg* v. *Rugg* (83 N. Y. 594). In the case of *Lewis* v. *Lewis* (11 id. 224) it was said by Judge ALLEN : " The onus of showing a compliance with the statute devolves upon the party seeking to establish the will, but the formal execution and publication may be shown by persons other than the subscribing witnesses, *or inferred from circumstances* as well as established by the direct and positive evidence of the attesting witnesses. It cannot, however, be presumed in opposition to positive testimony, merely upon the ground that the attestation clause is in due form and states that all things were done which are required to be done to make the instrument valid as a will." In *Jauncey* v. *Thorne* (2 Barb. Ch. 59) Chancellor WALWORTH states the rule to be : " A will may, therefore, be sustained even in opposition to the positive testimony of one or more of the subscribing witnesses, who either mistakenly or corruptly swear that the formalities required by the statute were not complied with, if from other testimony in the case the court or jury is satisfied that the contrary was the fact." To similar effect is *Chaffee* v. *Baptist Missionary Convention* (10 Paige, 91). In *Orser* v. *Orser* (24 N. Y. 52), Judge SELDEN says : " A will duly attested upon its face, the signatures to which are all genuine, may be admitted to probate, although none of

the subscribing witnesses are able to swear from recollection that the formalities required by the statute were complied with ; and even although some of them should swear positively that they were not, if the other evidence warrants the inference that they were."

The precise force which should be accorded to a full attestation clause regularly authenticated is not very clearly defined in the cases, but they all agree in the conclusion that it is entitled to great weight in the determination of the question of fact involved. (*Blake* v. *Knight*, 3 Curteis, 547; *Orser* v. *Orser*, 24 N. Y. 55.)

A regular attestation clause, shown to have been signed by the witnesses and corroborated either by the circumstances surrounding the execution of the instrument, the testimony of other witnesses to the fact of due execution or other competent evidence has been held in many other cases, as well as those already cited, to be sufficient to establish a will signed by the testator, even against the positive evidence of the attesting witnesses to the contrary. ·

We have been cited by the appellant's counsel to a number of cases in which the courts have refused probate to wills where it did not affirmatively appear that the necessary conditions had been performed, or upon the evidence of one or more of the attesting witnesses to the effect that some or all of the requirements of the statute had not been complied with in its execution. (*Chaffee* v. *Baptist' Miss. Con.*, 10 Paige, 85 ; *Rutherford* v. *Rutherford*, 1 Den. 33 ; *Lewis* v. *Lewis*, 11 id. 220.) To these cases may be added the case of *Woolley* v. *Woolley* recently decided in this court.* Such cases are quite frequent in the reports, and some of them arising under the former practice by which the facts were reviewed, are even cases where the appellate courts have differed in their view of the weight of evidence with the trial court and have arrived at contrary conclusions ; but these decisions do not conflict with the principles laid down in the cases above cited. They differ only in the facts to which the rules of law are applicable.

---

* *Ante*, p. 231.

The determination of the question of fact involved in the inquiry as to whether a will has been properly executed or not is governed by the same rules which control in the trial of other questions of fact. The proponent has the affirmative of the issue, and if he fails to convince the trial court by satis-factory evidence that each and every condition required to make a good execution of a will has been complied with, he will necessarily fail in establishing such will.

It would undoubtedly have been competent for the trial court in this case to have denied probate to the will in question upon the evidence before it, and in that event we should have been bound by its decision. This, however, it has not done, but on the contrary has found that the will was duly executed.

Upon referring to the evidence in the case, we certainly find quite an unusual and extraordinary condition. The two per-sons purporting to have signed this will as subscribing witnesses, not only each testify that none of the formalities required by the statute were complied with in its execution in their presence, but also positively deny that either of them was present at its execution or signed the attestation clause. No greater weight can be given to that part of the evidence of these witnesses wherein they deny that the several formalities required by the statute were unperformed in the execution of this will, than to their more important testimony that they were not present on the occasion and did not sign the attestation clause. It follows of course that if they do not recollect or perversely refuse to testify to the interview itself, that they would also deny the several incidents which accompanied such an interview.

If, therefore, it was established by competent evidence that these witnesses were mistaken as to the fact of acting as wit-nesses to the execution of this will, it would almost necessarily follow that they were also mistaken in their testimony as to the several particulars occurring at the time of such signing. " If so important a fact as the signature of their names as wit-nesses has escaped recollection, the accompanying incidents must have shared the same fate." " The denial of the principal event necessarily involves all the details in the same result."

(*Peebles* v. *Case*, 2 Bradf. 236.) Upon looking into the evidence we find that it was in proof that the testator boarded and lodged with the alleged subscribing witnesses (who were husband and wife) not only at the time the will purported to have been executed, but had done so for several years previous thereto. That the husband had been a subscribing witness to a will previously executed by the testator, and that the will in dispute, apparently properly executed, was found among the papers of the deceased after his death. It also appeared that the will, as well as the attestation clause, was wholly in the handwriting of the testator, and also bore his undoubted signature at the end thereof. . The testator declared during his last sickness that the will executed as he had described it was either among his papers or that he had given it to his executor. A bag containing the testator's papers, and among which was the will in question, was produced by the executor at a meeting of the testator's relatives, including the contestants, held at such executor's house on the day of the testator's death, and its contents were then for the first time made known to the parties interested by one of such relatives, who read it in the presence of the persons there assembled. Specimens of the handwriting of each of the subscribing witnesses were properly put in evidence on the trial, and from a comparison of such specimens with the signatures of the witnesses to the attestation clause, experts testified that such signatures were respectively in the genuine handwriting of such witnesses. But little is disclosed by the case with reference to the occupation, condition or character of the testator; but it does appear that he was a bachelor about fifty years of age and possessed of property of the value of about $12,000; that he had been for some time afflicted with a disease from which his death within a short period might reasonably have been anticipated. The will in question was the second made by him within a period of about five years, and the subject of a testamentary disposition of his property had obviously for some years been within his earnest contemplation.

The prior will, duly canceled, was put in evidence on the

trial, and although its contents do not appear in the record, it was proved to have been executed in accordance with the forms prescribed by the statute.

The surrogate has found as a fact upon conflicting yet competent evidence, that the subscribing witnesses to the will in question in fact signed the attestation clause.

We thus have an holographic will, not only properly signed and executed by the testator, but also signed by the witnesses, and appearing upon its face to be entirely regular, and purporting to have been executed with all of the formalities and in the manner required by the law to make a good and valid will.

The witnesses to the will have, by signing the attestation clause, certified to facts taking place upon its execution, directly conflicting with the evidence given by them upon the trial. To believe this evidence requires us to suppose that the testator deliberately forged the names of witnesses to his will at a time and under circumstances when it was just as convenient for him to have obtained their genuine signatures thereto. Upon this evidence the surrogate has refused to give credit to their testimony, and must, we think, necessarily have found, for reasons appearing sufficient to him, that none of the evidence given by them was entitled to belief. While no motive or reason appears upon the face of the evidence incorporated in the record before us, for imputing corruption or perjury to the subscribing witnesses in giving such evidence, yet to believe what they testify to on the subject involves consequences so unnatural and improbable that we are constrained to hold that the surrogate was justified in discrediting their testimony.

The affirmative evidence tending to show an omission on the part of the testator and witnesses to comply with the requirements of the law, in the execution of the will, having been thus discredited by the court below, it only remains to determine whether there was, within the rule, sufficient evidence of the facts to authorize the surrogate to find the due execution of the will.

It would seem from the language of the Code that proof of

the handwriting of the testator, and of the subscribing witnesses, to a proper attestation clause, was regarded as the most important and conclusive fact on the trial of an issue as to a proper execution of a will. Such evidence, in connection with other circumstances tending to prove its due execution, would seem, within all the authorities, to justify a decree admitting it to probate, even against the positive evidence of the subscribing witnesses. It was always considered to afford a strong presumption of compliance with the requirements of the statute, in relation to the execution of wills, that they had been conducted under the supervision of experienced persons, familiar not only with the forms required by the law, but also with the importance of a strict adherence thereto. (*Chambers* v. *Queen's Proctor*, 2 Curteis, 415 ; *In re Kellum*, 52 N. Y. 519 ; *Gove* v. *Gawen*, 3 Curteis, 151 ; *Peck* v. *Cary*, 27 N. Y. 9.)

We think that that presumption also arises in this case. The testator had not only once correctly gone through the ceremony of executing a will, but by drawing the attestation clause in question he had at the time necessarily brought before his mind each one of the conditions imposed by the statute as necessary to its valid execution. It is quite unreasonable to suppose that such a person having drawn and signed a will, and having added thereto a proper attestation clause, should have provided witnesses therefor, and required them to sign a certificate to the effect that each of the required formalities had then been observed, without also providing for their actual performance. He had knowledge of the necessity of the act required, to the validity of the business he was then transacting, and to hold that he omitted it would oblige us to ascribe to him the intention of performing a vain and useless ceremony at the expense of time and labor to himself and the commission of a motiveless crime. The presumptions arising from the certificate of the subscribing witnesses, and the supervision of an experienced person that the requisite formalities were complied with, are fortified by the acts and conduct of the testator. Nearly three years elapsed between the date of the will and the death of the testator, and

he had, therefore, ample time and opportunity to supply any defects in its execution, if any existed, but at the last moment, when the subject of a will was brought to his attention, he evidently supposed that he had made a valid testamentary disposition of his property.

It also appears that it was executed while the testator was living in the family of the alleged witnesses; that one of them had formerly acted in a similar capacity for him, and that they were both, persons who for convenience, as well as from their relations to the testator, would naturally have been selected as witnesses to a will drawn by himself, and whose execution he personally supervised.

We think the various circumstances to which we have referred, in connection with the full and regular attestation clause in the handwriting of the testator, proved to have been signed by the witnesses, were sufficient to authorize the finding by the court below establishing the will.

Of course no controversy can arise in this case over any question as to the real intention of the testator in the disposition made by this will of his property, for not only were his wishes deliberately formed, but they are recorded in his own handwriting, which implies care and deliberation on his part in framing its provisions and directions. It is the duty of the court to carry into effect a testator's intentions when they can be discovered, provided they do not contravene any provision of law.

It follows from these views that the judgment appealed from should be affirmed.

All concur, except RAPALLO, J., not voting.

Judgment affirmed.