In the Matter of Proving the Last Will and Testament of MARTHA H. BEEMAN, Deceased.

Surrogate's Court, Niagara County, April 10, 1927.

**Wills — probate — preliminary examination of subscribing witnesses — cross-examination is limited to matter developed on direct examination, under Surrogate's Court Act, § 141 — in event no direct examination is had, examination should be confined to facts surrounding execution of will — production of prior wills by subpœna duces tecum cannot be had in proceeding, under Surrogate's Court Act, § 141.**

On this preliminary examination of subscribing witnesses, as authorized by section 141 of the Surrogate's Court Act, cross-examination of said witnesses as to matters not developed in the course of the original examination cannot be had, for such an examination cannot go beyond the scope of the direct examination; in the event there has been no direct examination, the examination should be confined to what took place at the time of the execution of the instrument in controversy and whether the person executing the same appeared to be of sound mind and free from restraint.

Since contestants cannot subpœna witnesses on a preliminary examination, under section 141 of the Surrogate's Court Act, they cannot by subpœna *duces tecum* compel the production of prior wills, as was attempted in this instance, nor can the court order a witness to produce the prior wills.

PRELIMINARY examination of subscribing witnesses under section 141 of the Surrogate's Court Act.

*Cohn, Franchot, Runals & Robillard,* for the proponent.

*William Ross [Ward, Flynn, Spring & Tillou* of counsel], for Ella Sophia Savage and Sarah A. Dewey.

*Edwin C. Redfern,* for Jennie C. Plass.

*Judson, Holley & Andrews,* for Peter J. Van Vranken.

HICKEY, S.   The executor named in an instrument in writing purporting to be the last will and testament of Martha H. Beeman, deceased, has propounded the same for probate.   The alleged will gives all of decedent's estate to charity and contains the names of three subscribing witnesses.

Various interested parties who, for the sake of brevity, will be referred to as contestants, appeared by counsel on the return day of the citation and asked for an oral examination of the subscribing witnesses, as authorized by section 141 of the Surrogate's Court Act.   Two of such witnesses were produced and examined by proponent's attorney.   Their testimony showed that the statutory requirements as to due execution were complied with and that testatrix appeared to be of sound mind, memory and understanding, and free from restraint.   These witnesses were thereupon cross-

examined by attorneys for contestants. The third subscribing witness is an attorney and as such prepared the will in question. He is also named as executor of and trustee under said instrument. At the request of the attorneys for contestants, he was also produced and examined by contestants. This examination took the form of a cross-examination and covered a wide field before any objection was made by proponent's attorney. In the course of this examination it appeared that the witness had drawn three previous wills for testatrix, under which all her property went to charity the same as in the one now propounded. He testified that, with one or two exceptions, they were identical in language with the one now offered for probate. At this point in the examination, counsel for contestants asked that the prior wills be produced for inspection. This was objected to by counsel for proponent and an adjournment thereupon taken that the authorities might be consulted.

The range which a preliminary examination of this character can properly take is thus raised. So far as I have been able to discover, the question does not appear to have been passed upon by any of our courts.

Prior to the enactment of chapter 443 of the Laws of 1914, any interested party, upon filing objections to the probate of a will, could require the production for examination of not only the subscribing witnesses, but any other witnesses that the surrogate might be satisfied could give material testimony bearing on the issues raised by the objections. These " other witnesses " have been called " surrogate's witnesses " for the reason, I assume, that neither party is bound by their testimony. Of course, the contestants in a probate proceeding, where objections have been filed, are not bound by the testimony of the subscribing witnesses. Neither is the proponent; for it has long been settled that a will can be proved notwithstanding the fact that the subscribing witnesses testify that they neither saw testator sign it nor did they sign it themselves. (*Matter of Cottrell*, 95 N. Y. 329.) It would seem, therefore, that the same rule, namely, that neither party is bound by the testimony of subscribing witnesses upon a contested probate, also applies to a preliminary examination of this kind.

Where probate is contested or upon a preliminary examination such as this, the proponent generally makes out a *prima facie* case by swearing the subscribing witnesses and proving by them that the statutory requirements have been complied with, and that testator appeared to be of sound mind and free from restraint and then rests. The question now presented is, how far can the cross-examination of such witnesses extend upon a preliminary examination of this kind? Can it go beyond the scope of the

direct examination? Under the practice prior to 1914, Surrogate FOWLER, in *Matter of Hermann* (83 Misc. 283) held that so-called "surrogates' witnesses" could only be cross-examined in respect "to matters developed in the course of the original examination," and that, if the cross-examiner went beyond that point, he made the witness his own and would be bound by his answers. But that ruling was made in a contested probate proceeding and there was, apparently, no such thing then known as a preliminary examination such as this to enable interested parties to determine whether or not a contest should be made.

It is true that in the case cited the question arose in connection with the examination of witnesses other than the subscribing witnesses, but as already pointed out neither party is bound by the testimony of subscribing witnesses. Hence, why do they not properly fall into the class formerly known as surrogate's witnesses and why should not the same rule be applied to them respecting the range of cross-examination? In fact are there not stronger reasons for applying the rule upon an examination of this kind than existed under the former practice? Under the former practice, if the cross-examiner went beyond the proper scope of cross-examination he made the witness his own and was bound by his answer, but in an examination such as this, under section 141 of the Surrogate's Court Act, there is no such thing as the cross-examiner making the witness his own and being bound by his answer for the reason that no objections to probate having been filed there is, therefore, no contest on.

Does it follow then because there is no contest on that there is no limitation or restriction upon the range that cross-examination of subscribing witnesses may take? Can the cross-examiner go into every conceivable matter that either party might wish to develop in the course of a closely contested will contest without being bound by unfavorable testimony while reaping the benefit of any testimony favorable to his cause? Can he, for instance, delve into matters that proponent might wish to use in rebuttal in case of a contest, but which in no sense would be a part of his affirmative case? For instance, I can understand how proponent here might in case of a contest wish to place in evidence the prior wills of testatrix as matter in rebuttal, but I can hardly conceive. of their introduction as part of proponent's affirmative case.

I am, therefore, of the opinion that the cross-examination of subscribing witnesses should be confined to matter developed on the direct examination, or if there has been no direct examination as in the case of the third subscribing witness to the instrument in question, it should be confined to what took place at the time

of the execution of the instrument and whether the person executing the same appeared to be of sound mind and free from restraint. This seems to be in harmony with the ruling of Surrogate FOWLER in the *Hermann* case, cited above.

It must be conceded that under section 141 of the Surrogate's Court Act contestants cannot subpœna witnesses on a preliminary examination of this kind and, therefore, cannot by *subpœna duces tecum* compel the production of the prior wills; but they urge that at their behest, I should order witness to produce the prior wills. To do so would be to serve the same purpose as a *subpœna duces tecum* to which contestants are not entitled. I hardly feel, therefore, that I would be justified in ordering the production of documents at contestants' demand in a case where I could not grant them a *subpœna duces tecum* calling for the production of the same documents. I must, therefore, decline to order the production of the prior wills.

It is doubtless true that if the testimony of the subscribing witnesses was inherently weak, contradictory or suspicious I might, in order to satisfy my own conscience, require the production of the prior wills as a condition of granting probate, but that situation does not confront me. On the record as it now stands, I would feel compelled to admit the alleged will to probate without production of the prior wills or the introduction of further evidence. Proponent's objection to an order requiring witness to produce the prior wills is, therefore, sustained.